## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **KELLEY HART**, <br><br> **Plaintiff,** <br><br> vs. <br><br> **WBY, INC. d/b/a Follies and STEVEN M. YOUNGELSON,** <br><br> **Defendants.** | **Civil Action File No.** <br><br><br> **Jury Trial Demanded** |

## COMPLAINT

Plaintiff Kelley Hart ("Ms. Hart"), by and through the undersigned counsel and pursuant to Fed. R. Civ. P. 7, brings this Complaint against WBY, Inc. d/b/a Follies ("WBY") and Steven M. Youngelson ("Mr. Youngelson") (collectively "Defendants"), and shows the Court as follows:

### INTRODUCTION

1.

Ms. Hart brings this action under the Fair Labor Standards Act of 1938 (as amended) 29 U.S.C. § 201 *et seq.*, ("the FLSA") to recover due but unpaid minimum wage and an additional like amount as liquidated damages, and to be reimbursed for her costs of litigation, including her reasonable attorney's fees.

2.

Ms. Hart also seeks to recover monies that Defendants forced her to pay Defendants and their employees in the form of "fees" and "fines", and monies that Defendants forced her to pay into an unlawful mandatory tip pool.

3.

Ms. Hart will also show that Defendants perpetrated a scheme to avoid the requirements of the FLSA by misclassifying her as an independent contractor instead of an employee.

4.

A related case, *Payne v. WBY, Inc.*, Case No. 1:14-cv-00913-CAP (N.D. Ga. 2014), is currently pending before the Court. The Court's docket indicates that this related case has been stayed pending mediation and administratively closed.

## JURISDICTION AND VENUE

5.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution and FLSA § 16(b), 29 U.S.C. § 216(b), 28 U.S.C §§ 1331 and 1337, because this case arises under the FLSA, a federal statute that affects interstate commerce.

6.

Venue properly lies in the Northern District of Georgia, Atlanta Division, under 28 U.S.C. § 1391 because Defendants conduct business in this judicial district; and all events giving rise to the claims herein arose in this judicial district.

## THE PARTIES

7.

Ms. Hart is an individual residing in Cobb County, Georgia.

8.

WBY is a corporation organized under the laws of Georgia.

9.

WBY can be served with process through its registered agent, Cary S. Wiggins, at 260 Peachtree Street, Suite 401, Atlanta, Georgia 30303.

10.

WBY is subject to the personal jurisdiction of this Court.

11.

Mr. Youngelson is a resident of Fulton County, Georgia.

12.

Mr. Youngelson can be served with process at his residence at 3040 Peachtree Road, NW, Unit 911, Atlanta, Georgia 30305, or wherever he can be found.

13.

Mr. Youngelson is subject to the personal jurisdiction of this Court.

**FACTUAL ALLEGATIONS**

14.

WBY owns and operates an adult entertainment establishment located at 4075 Buford Highway NE, Atlanta, Georgia 30345, which operates under the trade name "Follies" ("the Club").

15.

Ms. Hart worked for Defendants as a dancer at the Club from 2010 through September 2014.

16.

At all times material to this action, WBY and Mr. Youngelson jointly owned and operated the Club.

17.

At all times material hereto, WBY exercised control over the operations and employment practices and procedures of the Club.

18.

At all times material hereto, WBY exercised control over the terms of Ms. Hart's employment.

19.

At all times material hereto, WBY exercised control over the terms of Ms. Hart's compensation.

20.

At all times material hereto, WBY was an "employer" as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

21.

At all times material hereto, Mr. Youngelson exercised control over the operations and employment practices and procedures of the Club.

22.

At all times material hereto, Mr. Youngelson exercised control over the terms of Ms. Hart's employment.

23.

At all times material hereto, Mr. Youngelson exercised control over the terms of Ms. Hart's compensation.

24.

At all times material hereto, Mr. Youngelson was involved in the day-to-day operation of the Club.

25.

At all times material hereto, WBY vested Mr. Youngelson with supervisory authority over Plaintiffs.

26.

At all times material hereto, Mr. Youngelson was an "employer" as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

27.

At all times material hereto, Mr. Youngelson regularly communicated with Follies' management regarding the day-to-day operation of the Club.

28.

The primary business of the Club is to provide entertainment in the form of nude and semi-nude dancers and the sale of food and alcoholic beverages.

29.

WBY employed Ms. Hart as a dancer from an unknown date in 2010 through September 2014.

30.

At all times material hereto, WBY was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a) and in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

31.

At all times material hereto, WBY was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a) and in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

32.

During 2014, the Club employed two or more persons who regularly sold food products and alcoholic beverages that were produced and shipped from outside of the State of Georgia, regularly processing out-of-state credit card sales, and regularly using wires in the furtherance of their business.

33.

During 2014, the Club employed two or more persons "handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

34.

During 2014, the Club employed two or more person "engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

35.

During 2014, the Club had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

36.

During 2013, the Club employed two or more persons who regularly sold food products and alcoholic beverages that were produced and shipped from outside of the State of Georgia, regularly processing out-of-state credit card sales, and regularly using wires in the furtherance of their business.

37.

During 2013, the Club employed two or more persons "handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

38.

During 2013, the Club employed two or more person "engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

39.

During 2013, the Club had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

40.

During 2012, the Club employed two or more persons who regularly sold food products and alcoholic beverages that were produced and shipped from outside of the State of Georgia, regularly processing out-of-state credit card sales, and regularly using wires in the furtherance of their business.

41.

During 2012, the Club employed two or more persons "handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

42.

During 2012, the Club employed two or more persons "engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

43.

During 2012, the Club had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

44.

During 2011, the Club employed two or more persons who regularly sold food products and alcoholic beverages that were produced and shipped from outside of the State of Georgia, regularly processing out-of-state credit card sales, and regularly using wires in the furtherance of their business.

45.

During 2011, the Club employed two or more persons "handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

46.

During 2011, the Club employed two or more persons "engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

47.

During 2011, the Club had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

48.

During 2010, the Club employed two or more persons who regularly sold food products and alcoholic beverages that were produced and shipped from outside of the State of Georgia, regularly processing out-of-state credit card sales, and regularly using wires in the furtherance of their business.

49.

During 2010, the Club employed two or more persons "handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

50.

During 2010, the Club employed two or more persons "engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

51.

During 2010, the Club had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

52.

At all times material hereto, Ms. Hart was not exempt from the minimum wage requirements of the FLSA by reason of any exemption set forth in 29 U.S.C. § 213.

53.

At all times material hereto, Defendants did not employ Ms. Hart in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

54.

At all times material hereto, Defendants did not employ Ms. Hart in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

55.

Defendants failed to inform Ms. Hart of the provisions of FLSA § 3(m); 29 U.S.C. § 203(m).

56.

At all times material hereto, Defendants required Ms. Hart to pay a portion of her tips as "fees" to the Club and its owners, agents, and employees.

57.

At all times material hereto, Defendants required Ms. Hart to pay "fees" to the Club's employees, including but not limited to disc jockeys, house mothers, valets, and bartenders.

58.

At all times material hereto, Defendants required Ms. Hart to pay a portion of her tips to Defendants and their agents and employees for reasons other than the pooling of tips among employees who customarily and regularly received tips.

59.

At all times material hereto, Defendants failed to pay Ms. Hart minimum wages as required by 29 U.S.C. § 201 et seq.

60.

At all times material hereto, Defendants required Ms. Hart to work a minimum of four shifts per week, except at such times that she could provide proof of school enrollment.

61.

At all times material hereto, Defendants required Ms. Hart to work every Friday.

62.

At all times material hereto, Defendants scheduled Ms. Hart to work the remaining three days of the week.

63.

At all times material hereto, Defendants required Ms. Hart to pay "fines" for late arrival to a scheduled shift.

64.

At all times material hereto, Defendants required Ms. Hart to pay "fines" for early departure from a scheduled shift.

65.

At all times material hereto, Defendants required Ms. Hart to pay "fines" for failing to report to a scheduled shift.

66.

At all times material hereto, Defendants required Ms. Hart to pay "fines" for missed rotations on stage.

67.

At all times material hereto, Defendants required Ms. Hart to perform on stage during set three song rotations.

68.

At all times material hereto, Defendants required Ms. Hart to take a breathalyzer test before leaving the premises at the end of each shift.

69.

At all times material hereto, Defendants required Ms. Hart to wear shoes with heels at least 3 or 4 inches high at all times while working.

70.

At all times material hereto, Defendants required Ms. Hart to appear fully nude on stage after receiving at least $10.00 in tips during a single stage rotation.

71.

At all times material hereto, Defendants prohibited Ms. Hart from consuming food or drinks at the Club unless she purchased such food and drinks from the Club.

72.

At all times material hereto, Defendants willfully failed to pay Ms. Hart minimum wages as required by 29 U.S.C. § 201 et seq.

73.

At all times material hereto, Defendants failed to "post and keep posted a notice explaining the [FLSA] ... in [a] conspicuous place[]," as required by 29 CFR § 516.4.

**FAILURE TO PAY MINIMUM WAGE (29 U.S.C. § 206)**

74.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

75.

At all times material hereto, Ms. Hart was an employee covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

76.

At all times material hereto, Defendants failed to compensate Ms. Hart at an hourly rate above or equal to the minimum wage as established in accordance with the FLSA.

77.

At all times material hereto, Defendants intentionally and willfully failed to compensate Ms. Hart at an hourly rate above or equal to the minimum wage as established in accordance with the FLSA.

78.

At all times material hereto, Defendants required Ms. Hart to pay a portion of her tips to the Club's employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

79.

Defendants' requirement that fees to be paid by Ms. Hart to Defendants and their agents and employees violated the "free and clear" requirement of 29 CFR 531.35.

80.

Ms. Hart is entitled to payment of minimum wages for all hours worked in an amount to be determined at a trial by jury, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

81.

Ms. Hart is entitled to reimbursement of all fees and fines paid to Defendants and their agents and employees, in addition to all other unpaid wages.

82.

As a result of Defendants' intentional and willful nonpayment of minimum wages as alleged above, Ms. Hart is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

83.

Defendants are liable to Ms. Hart for her litigation costs, including her reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

**WHEREFORE,** Ms. Hart prays:

(a) That her claims be tried before a jury;

(b) That she be awarded an amount to be determined at trial against Defendants jointly and severally in unpaid minimum wage under the FLSA, plus an additional like amount in liquidated damages and pre- and post-judgment interest thereon;

(c) That she be awarded an amount to be determined at trial against Defendants jointly and severally for monies illegally withheld from her tips;

(d) That she be awarded her costs of litigation, including her reasonable attorney's fees; and

(e) For such other and further relief as is just and equitable.

Respectfully submitted,

*DELONG CALDWELL BRIDGERS &*
*FITZPATRICK, LLC*

*/s/ Charles R. Bridgers*
Charles R. Bridgers
Ga. Bar No. 080791

3100 Centennial Tower
101 Marietta Street                */s/ Kevin D. Fitzpatrick, Jr.*
Atlanta, Georgia 30303             Kevin D. Fitzpatrick, Jr.
(404) 979-3171                     Ga. Bar No. 262375
(404) 979-3170 (f)
charlesbridgers@dcbflegal.com      */s/ Matthew W. Herrington*
kevin.fizpatrick@dcbflegal.com     Matthew W. Herrington
matthew.herrington@dcbflegal.com   Ga. Bar No. 275411

**Counsel for Plaintiff**

19